UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
••••••••••••••••••••••••••••••••••••••••••••••••••••

**JOSEPH COTE,**

                                **Plaintiffs,**

       vs.                                                   6:09-CV-1273 (NAM/GHL)

**RICHARD E. TENNANT, JOHN M. STERLING, and
RIVERSOURCE LIFE INSURANCE COMPANY OF
NEW YORK f/k/a/ IDS LIFE INSURANCE COMPANY
OF NEW YORK,**

                                **Defendants.**

••••••••••••••••••••••••••••••••••••••••••••••••••••

APPEARANCES:

Office of Onofrio J. Puleo
Onofrio J. Puleo, Esq., of counsel
329 Genesee Street
Utica, New York 13501
Attorney for Plaintiff

Dorsey & Whitney LLP
Brooke E. Pietrzak, Esq., of counsel
Mark S. Sullivan, Esq., of counsel
250 Park Avenue
New York, New York 10177
Attorneys for Defendants

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

     In this action, plaintiff claims that the individual defendants, acting as agents of defendant Riversource Life Insurance Company of New York ("Riversource"), wrongfully and fraudulently persuaded plaintiff to "roll over" his fully-paid single premium life insurance policy into a flexible premium variable life insurance policy, causing him monetary loss. Plaintiff asserts various New York State common law claims and one claim based on the Racketeer Influenced

and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.* Defendants removed the action from New York State Supreme Court, County of Oneida, to District Court, alleging federal question jurisdiction based on the RICO cause of action.

Defendants move (Dkt. No. 6) to dismiss the complaint on various grounds. As explained below, the Court dismisses the RICO cause of action for failure to state a claim and remands the action to state court.

## COMPLAINT

In the complaint, plaintiff states that the individual defendants, Richard E. Tennant and John M. Sterling (together, "Advisors"), "set themselves out to be Certified Financial Planners and Personal Financial Advisors to the general public and are either independent agents or agents of among others the defendant [Riversource]." The complaint alleges the following:

> That at all times hereinafter mentioned the plaintiff was a recent widower of advanced age, on a limited income, and susceptible to being influenced and deceived by those he believed to be honest, truthful and trusting individuals.
>
> That at all times hereinafter mentioned the plaintiff had a long standing friendly, business, confidential, and trusting relationship with the Advisors. During this relationship the Advisors prepared the plaintiff's income tax returns, handled his investments, and sold him insurance. That as a consequence of this relationship the plaintiff relied upon the knowledge, direction and advice of the Advisors and verily believed them to be honest, truthful and trusting individuals.
>
> Upon information and belief the Advisors knew the plaintiff was of advanced age, on a limited income, a recent widower, and susceptible to being influenced and deceived. The Advisors, also, knew the plaintiff relied upon their advice, directions, and trusted them because of their long standing friendship, confidential, and trusting relationship that they nurtured with the plaintiff over the years.
>
> Prior to September 1999 the plaintiff was the owner of a fully paid-up and secure Single Premium Life Insurance Policy (SPL) #979200693585. The

SPL, was sold to the plaintiff by the Advisors in October 1987 and was placed with the defendant Riversource.

The Advisors met with the plaintiff in September 1999. During this meeting the Advisors reviewed plaintiff's financial portfolio including his fully paid-up and secure SPL. Upon information and belief, the plaintiff's SPL had a death benefit of $54.120,00 which was fully payable to plaintiff's daughters upon his death. At that time, the SPL's roll over cash value was $37,065.25.

The plaintiff explained to the Advisors, during the September 1999 meeting, that he was desirous of securely maximizing his legacy to his daughters. The Advisors advised that they could make the plaintiff more money than he was earning and without risk, and directed the plaintiff to roll-over the cash value of his SPL insurance policy into a Riversource Flexible Premium Variable Life Insurance Policy (FPVL).

Upon information and belief, the FBVL by its terms was an inappropriate policy of life insurance for the plaintiff considering the plaintiffs financial goals, his age, fixed retirement income, and the death benefit provided to the plaintiff by his paid-up SPL policy.

Notwithstanding the above, the Advisors represented to the plaintiff, who verily believed, that the FPVL was a better insurance vehicle for him because the death benefit was equal in an amount to that of the SPL, and may increase in value over time. They further explained to the plaintiff, who verily believed, that the SPL roll over cash value exchange would be the only payment ever required of the plaintiff for the coverage provided by the FPVL policy.

On or about September 6, 1999, in reliance upon the aforesaid representations of the Advisors, the plaintiff signed an application of insurance to purchase the FPVL policy, surrendered and allowed for the roll-over cash value exchange of his paid up SPL policy to be applied as payment for the purchase of the FPVL policy. The plaintiff verily believed that by this transaction the FPVL policy was paid in full. Riversource, thereafter, issued to the Plaintiff FPVL policy # 9790-09041370 on October 5,1999.

At no time during the fall of 1999 or thereafter through March 2009 did the Advisors tell or explain to the plaintiff that to in order to maintain the FPVL policy death benefit during his lifetime that additional payments in excess of the paid-up SPL roll over cash value exchange may be required from the plaintiff.

-3-

> At no time during the fall of 1999 or thereafter through March 2009 did the Advisors tell or explain to the plaintiff that SPL roll-over cash value exchange was not a payment in full for the purchase of the FPVL policy death benefit during his lifetime.
>
> At no time during the fall of 1999 or thereafter through March 2009 did the Advisors advise the plaintiff that the SPL roll-over cash value exchange was not a single payment premium for the FPVL policy death benefit during his lifetime.
>
> At no time during the fall of 1999 or thereafter through March 2009 did the Advisors advise the plaintiff that the roll-over exchanged FPVL policy placed at risk the cash value of the fully paid and secure SPL policy.
>
> On or about March 23, 2009 the plaintiff learned for the first time from the Advisors that the FPVL policy would terminate during his lifetime and that death benefits would not paid to his daughters after October 5, 2009 unless the plaintiff remitted additional monthly payments to Riversource in an amount greater than he was capable of paying.

(Paragraph numbering omitted.)

The sole cause of action over which District Court has original jurisdiction is the fifth cause of action, in which plaintiff claims:

> Pursuant to Racketeer Influenced and Corrupt Organization Act 18 USC section 1961, *et seq*. the Advisors or defendants are an enterprise within the meaning of 18 USC section 1961(4), which affects interstate commerce as above set forth.
>
> In the execution of the aforesaid scheme to defraud the plaintiff and in furtherance thereof, the defendants utilized the United States Mail in violation of USC section 1341. In addition, the defendants interfered with commerce as set forth above in violation of 18 USC section 1951. The mailings and actions of the Advisors constitute a pattern of racketeering activity as defined in 18 USC section 1961(1) and (5).
>
> That by reason of the aforementioned circumstances each of the defendants unlawfully, willfully, and knowingly have received financial gain income, directly or indirectly, from the pattern of racketeering activities.
>
> That upon information and belief, upon the foregoing, the Advisors or defendants used or invested, directly or indirectly, the proceeds of such

> income in the establishment or operation of their association with one another, or the association scheme to defraud the plaintiff in violation of 18 USC section 1962(A).
>
> That by reason of the aforementioned association, the Advisors or defendants have unlawfully, willingly, and knowingly conducted and conspired in association with one another, the affairs of their association through a pattern of racketeering activities in violation 18 USC section 1962(C) and as a direct and proximate result of the aforesaid violation 18 USC section 1962, the plaintiff has suffered general and special damages.

(Paragraph numbering omitted.)

## DISCUSSION

In addressing a dismissal motion, the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although all factual allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 550 U.S. 544, 570 (2009).

As stated, the sole cause of action over which District Court has original jurisdiction is the fifth cause of action alleging a RICO violation. The complaint cites two RICO offenses: using or investing "any income derived ... from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in interstate commerce, 18 U.S.C. § 1962(a); and conducting or participating in "the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). By definition, a "pattern of racketeering activity" is an essential element of both of these offenses.

Defendants argue that plaintiff fails to make out a RICO claim because he fails to allege a

pattern of racketeering activity. To establish such a pattern, plaintiff must show "at least two acts of racketeering activity" committed in a 10-year period. 18 U.S.C. § 1961(5). These predicate acts must be related and must amount to, or pose a threat of, continuing criminal activity. *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997). RICO's pattern element "serves to ensure that a defendant's criminal participation in an enterprise is not merely isolated or sporadic, but indicative of the sort of continuity of criminal activity – or the threat of continuity – that is the hallmark of racketeering." *United States v. Pizzonia*, 577 F.3d 455, 465 (2d Cir. 2009) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 242 (1989)). The Second Circuit explains the continuity aspect of RICO's pattern requirement as follows:

> Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition, and thus may be proved in a variety of ways. For example, a party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Alternatively, the continuity requirement may be met by demonstrating a threat of continuity, for example, by showing that the defendant operates as part of a long-term association that exists for criminal purposes, or that the predicates are a regular way of conducting defendant's ongoing legitimate business.

*Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520-21 (2d Cir. 1994) (citations and internal quotes omitted). Plaintiff may not "artificially fragment[] a singular act into multiple acts simply to invoke RICO." *Schlaifer Nance*, 119 F.3d at 98.

In contending that the complaint sufficiently pleads a pattern of related racketeering predicates that meet the continuity requirement, plaintiff argues:

> The continuity issue is demonstrated in Mr. Cote's complaint. He met at least yearly, both prior to and since September 1999 through March 2009, with the Advisors for the preparation of his income tax returns. The facts stated within the entire complaint imply that there were a number of mailings by the defendants in furtherance of, and associated with the

> defendants' fraudulent activities through the Fall of 1999. Further, the complaint implies that such mailings occurred on at least a yearly, if not a monthly basis, from the Fall of 1999 through March 2009.
>
> Also, it can be reasonably inferred from the entire complaint, that the defendants' predicate acts, played upon Mr. Cote, were and are the regular way the defendants operated their legitimate business when dealing with their trusting, elderly clients.

There is no merit to this contention. The complaint alleges only a single isolated act with a single victim, *i.e.*, the act of the individual defendants in advising plaintiff to convert his fully-paid single premium life insurance policy into a flexible premium variable life insurance policy on September 16, 1999. The alleged additional meetings and mailings do not amount to additional related predicate acts that meet the continuity requirement; rather, the allegations simply reflect plaintiff's attempt to fragment the single isolated act into a pattern of separate acts. Nor does the complaint otherwise plead a pattern of racketeering activity. Accepting as true the factual allegations in plaintiff's complaint and drawing all reasonable inferences in plaintiff's favor, the Court finds that the complaint fails to state a plausible claim to relief under RICO. The fifth cause of action is dismissed.

The remaining causes of action are based on New York State common law. There is no basis for diversity jurisdiction. Particularly in view of the fact that this litigation is at an early stage, it would be inappropriate for this Court to exercise jurisdiction over the state law claims. The case is remanded to state court. *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

It is therefore

ORDERED that defendants' motion to dismiss (Dkt. No. 6) is granted in part and denied in part; and it is further

ORDERED that the fifth cause of action is dismissed; and it is further

ORDERED that the action is remanded to New York State Supreme Court.

IT IS SO ORDERED.

Date:  May 10, 2010

Norman A. Mordue
Chief United States District Court Judge